RICHARD J. SULLIVAN, District Judge,
concurring in part and dissenting in part:
I concur in the majority’s opinion with regard to Appellants’ Rehabilitation Act, Due Process, and Equal Protection claims, but I respectfully dissent insofar as the *220 Court’s opinion relates to the dismissal of Appellants’ IDEA claims because I believe that Appellants’ complaint alleged sufficient facts to survive a motion to dismiss, and because I find that the materials outside the complaint relied on by the majority do not establish, as a matter of law, the reasonableness of the State’s ban on aversive interventions.
In dismissing Appellants’ complaint, the district court held that “the allegations demonstrate that the NYSED and the Board of Regents explored the available data, studies, and literature before making a reasoned decision that aversives should be generally prohibited.” However, nowhere in the opinion did the district court actually cite from the pleadings to support this conclusion. Instead, the district court merely observed that “plaintiffs do not allege that [defendants did not consider the use of aversive interventions before adopting § 200.22” and then concluded that “[t]he [cjourt is not willing to second guess that policy decision.” Id. (emphasis added).
While it is of course true that courts are not to second guess state authorities in matters relating to educational policy, the law is equally clear that federal courts may not merely “rubber stamp administrative decisions” of this kind. Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir.2005). Indeed, this Court has recognized that, notwithstanding “our deferential position with respect to state educational authorities crafting educational policy,” “our review must be searching, and we must recognize that even when educational authorities act with the best intentions they may sometimes fall short of their obligations under the IDEA, and courts must then act to ensure compliance with Congress’s directives.” P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Ed., 546 F.3d 111, 120-21 (2d Cir.2008) (internal citations omitted). This is particularly the case at the pleading stage, where a plaintiffs’ allegations are presumed to be true. See Fed.R.Civ.P. 12(b)(6); ATSI Commc’ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007). Here, the district court’s conclusion that the prohibition of aversive interventions was reasonable is particularly problematic, because Appellants alleged in their complaint that the scientific literature, which the district court mentioned (but did not cite) in its opinion, actually “supports the use of aversive interventions and their vital role in providing a FAPE to students with severe behavior disorders.”
The majority affirms the district court’s dismissal of Appellants’ suit, finding that the prohibition of aversive interventions reflects “a considered judgment by the State of New York regarding the education and safety of its children that is consistent with federal education policy and the United States Constitution.” In reaching this conclusion, the majority relies not on the pleadings or on the district court’s opinion, but rather on four pages from the Education Department’s Notice of Emergency Adoption and Proposed Rule Making, of which it has taken judicial notice. While the Court can certainly take judicial notice of facts, these four pages, standing alone, are insufficient to justify the district court’s dismissal of Appellants’ claims at this early stage of the litigation. Indeed, the first two of those pages simply note the Department’s “concerns” with aversive interventions based on “site visits, reports and complaints filed by parents, school districts and others,” Notice of Emergency Adoption & Proposed Rule-making, N.Y. State Educ. Dep’t, June 20, 2006; the latter two merely catalog scientific studies that purportedly support the proposed rule.
*221 Importantly, the scientific studies summarized in the Notice of Emergency Adoption and Proposed Rule Making do not directly call for the prohibition of aversive interventions. To the contrary, these studies presuppose the use and utility of aversive interventions at least in certain contexts and merely set forth “standards” and “strategies to improve an ABI’s [aversive behavioral intervention’s] effectiveness and acceptability.” Id. It is worth noting that of the several studies cited in the Notice of Emergency Adoption and Proposed Rule Making, the two included in full in the record actually describe the need for aversive interventions in certain instances. See Dorothy C. Lerman & Christina M. Vondram, On the Status of Knowledge for Using Punishment: Implications for Behavior Disorders, 35 J. Appl. Behav. Anal, 431, 456 (2002) (noting that “punishment is still sometimes needed to reduce destructive behavior to acceptable levels”); Sarah-Jeanne Salvy et al., Contingent Electric Shock (SIBIS) and a Conditioned Punisher Eliminate Severe Head Banging in a Preschool Child, 19 Behav. Intervent. 59, 70 (2004) (noting that ABIs “can sometime be necessary, although not sufficient, to eliminate severe and harmful [self-injurious behavior] in the natural environment”). Consequently, I am unpersuaded that the Notice of Emergency Adoption and Proposed Rule Making cited by the majority provides a sufficient basis for upholding the district court’s dismissal.
Of course, like the majority, I am “mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.” Cerra, 427 F.3d at 192. However, it seems to me that the appropriate course would be to return this action to the district court, which could then review a fuller record, beyond the pleadings, to assess the regulation and its compliance with the IDEA. If my cursory review of the literature in the field is any indication, it seems likely that Appellees will be able to demonstrate that “the regulations represent an informed, rational choice between two opposing schools of thought on the use of aversives,” Alleyne v. N.Y. State Educ. Dept., 691 F.Supp.2d 322, 333 (N.D.N.Y.2010), and that Appellants will therefore have difficulty overcoming the “substantial deference” accorded to the review of state policy-making agencies, Wasser v. N.Y. State Office of Voc. & Educ. Servs. for Individuals With Disabilities, 602 F.3d 476, 477 (2d Cir.2010). Nevertheless, while the outcome may ultimately be the same, it is important that the result be based on a careful assessment of the merits, founded on a well-developed record. In my view, the district court’s dismissal — and the majority’s affirmance — takes an unnecessary short cut to reach an outcome that cannot be justified at this stage of the proceedings. For these reasons, I respectfully dissent.